Joe Angelo (Bar No. 268542)
jangelo@gajplaw.com
Gale, Angelo, & Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, California 95661
Telephone: 916-290-7778
Facsimile: 916-282-0771

Attorney for Plaintiff
Shannon Leach

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| Shannon Leach<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Experian Information Solutions, Inc.<br><br>　　　　Defendant. | CASE NO. 8:24-cv-00847<br><br>COMPLAINT FOR DAMAGES:<br><br>　1. Violation of Fair Credit Reporting Act |

COMES NOW Plaintiff Shannon Leach (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendant Experian Information Solutions, Inc. in connection with its inaccurate, misleading, or incomplete reporting of the following accounts:

a. Wells Fargo Home Mortgage ("Wells Fargo")

b. Bank of America, N.A. ("BofA")

c. Barclay's Bank ("Barclay's")

d. LendingClub Corporation ("LendingClub")

e. TD Auto Finance ("TD")

f. Time Investment Co. ("TIC")

3. BofA, Wells Fargo, and Barclays are reporting, on Plaintiff's Experian credit report, that Plaintiff's accounts as delinquent with a past-due balance owed rather than listing the account as included and discharged in bankruptcy.

4. In addition, BofA, Wells Fargo, and Barclays failed to update the tradeline to include the bankruptcy notation.

5. LendingClub, TD, and TIC are reporting Plaintiff's accounts as charged-off rather than included/discharged in bankruptcy.

6. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

7. Plaintiff's credit score has been adversely impacted by the reporting; he has been unable to rebuild her credit score and obtain favorable interest rates as a result of the reporting by the above referenced furnishers to Defendant Experian.

8. Third parties have been exposed to the inaccurate tradelines.

9. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

**JURISDICTION & VENUE**

10. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

11. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

12. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

13. Plaintiff alleges that all actions alleged herein by Defendant Experian was done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.

14. In the alternative Plaintiff alleges that Experian's actions were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

15. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

16. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

17. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

18. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

19. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

20. There are 28 FICO Scores that are commonly used by lenders.

21. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

22. The three largest CRAs are Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Transunion, LLC.

23. FICO does not control what information is provided in a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

24. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

25. Each of the five factors is weighed differently by FICO.

26. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

27. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

28. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

29. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

30. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

31. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

**Metro 2**

32. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

33. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

34. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

35. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

36. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:

   a. The CDIA offers a FCRA certificate program for all CRAs.
   b. The CDIA offers a FCRA awareness program for all CRAs.

    c. The CDIA offers a FCRA Certificate program for DFs.

    d. The CDIA offers a FCRA awareness program for DFs.

    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

37. The CDIA's Metro 2 is accepted by all CRAs.

38. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

39. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

40. The three main credit bureaus helped draft the CRRG.

41. The CRRG is not readily available to the public. It can be purchased online for $229.45.

42. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

43. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

44. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

45. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### Consumer Information Indicator

46. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.

47. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

48. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

49. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

50. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

51. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

52. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

53. The CII Metro 2 Code "E" denotes that a Chapter 13 bankruptcy has been discharged.

54. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

55. Failure to update the CII to a "E" on discharged debts results in it appearing that a consumer, like Plaintiff, still owes on the account that was otherwise included and discharge in a bankruptcy.

56. The result lowers a consumer's credit score and makes a consumer appear much less credit worthy.

### Plaintiff's Bankruptcy

57. Plaintiff filed for chapter 7 bankruptcy protection on August 12, 2022.
58. Plaintiff received her chapter 7 discharge on December 16, 2022.
59. BofA, Wells Fargo, Barclays, TD, TIC, and LendingClub were all listed as creditors in Plaintiff's chapter 7 bankruptcy filing and had actual knowledge of the discharge entered in December of 2022.

### Plaintiff's Credit Report

60. After Plaintiff completed her bankruptcy and received her discharge Plaintiff ordered a credit report to confirm her creditors properly updated the accounts to reflect the bankruptcy discharge.
61. While most of her creditors updated the accounts to indicate the bankruptcy discharge, Plaintiff noticed delinquent tradelines from the following creditors on his Experian credit report:
    a. BofA – reporting to Experian that over $17,000 was past-due and outstanding;
    b. Wells Fargo – reporting to Experian that over $100,000 was past-due and outstanding;
    c. Barclay's – reporting to Experian that over $7,500 was past-due and outstanding;
    d. LendingClub – reporting to Experian that over $7,000 was charged-off;
    e. TD – reporting to Experian that over $19,500 was charged-off; and
    f. TIC – reporting to Experian that over $3,400 was charged-off.
62. The above tradelines did not indicate that Plaintiff had filed for bankruptcy or received a chapter7 discharge.

63. In response, Plaintiff disputed the problematic tradelines with Experian in April of 2023, indicating that the disputed accounts were included/discharged in bankruptcy and that no past-due balances, charge-off notations, or other delinquent account information should be reporting.

64. A second dispute was sent to Experian in June of 2023 again informing it of the bankruptcy filing and discharge and asked that the disputed accounts be updated.

65. Plaintiff believes that the disputed information was transmitted to BofA, Wells Fargo, Barclay's, LendingClub, TD, and TIC by Experian.

66. In August of 2023 Plaintiff ordered supplemental credit reports to verify that the disputed accounts were updated in response to the multiple disputes submitted to Experian.

67. However, the disputed accounts were not updated on Plaintiff's Experian report.

**Damages**

68. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

69. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by Experian failing to update the disputed accounts.

70. By Experian allowing BofA, Wells Fargo, Barclay's, LendingClub, TD, and TIC to report the accounts as if no bankruptcy was filed and with past-due notations, Plaintiff's credit score has been harmed.

71. Further, the inaccurate Experian reports have been disclosed and disseminated to various third-party lenders.

72. Until Plaintiff's Experian credit report is updated, she continues to be a severe credit risk.

73. The actions of Experian and as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq*.

## FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendant Experian)

**Experian – Failure to Assure Credit Reporting Accuracy.**

74. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

75. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

76. Had Experian maintained reasonable procedures to assure maximum accuracy Experian would never have allowed BofA, Wells Fargo, Barclay's, LendingClub, TD, and TIC to report the accounts as described herein.

77. As a result of Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, denial of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

78. Experian allowed the inaccurate information reported by BofA, Wells Fargo, Barclay's, LendingClub, TD, and TIC to be transmitted to various third-party lenders, further damaging Plaintiff's credit.

79. Here Experian was notified twice that Plaintiff was disputing the lack of a bankruptcy notation on his credit accounts yet Experian failed to make any updates to Plaintiff's credit profile.

80. The violations described herein by Experian were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

81. Instead of correcting BofA, Wells Fargo, Barclay's, LendingClub, TD, and TIC's inaccurate reporting Experian allowed the inaccurate and misleading information to continue to be reported and disseminated to third parties.

### Willfulness

82. The violations described herein by Experian were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

83. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

84. Such a finding should shock the conscience.

85. When those errors are disputed Experian intentionally send consumer disputes to employees who do not live within the continental United States.

86. This is intentionally done to hide and or subvert a consumer's ability to confront individuals directly responsible for approving accurate reporting.

87. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendant Experian receive little to know training concerning how to accurately report consumer debt.

88. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

89. Experian employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

90. Experian has intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

91. Experian also allowed BofA, Wells Fargo, Barclay's, LendingClub, TD, and TIC to report the account with inaccurate information despite specifically being told in the two dispute letters why the information contained in Plaintiff's Experian credit report was incorrect.

92. Despite Experian having actual knowledge of Plaintiff's account status after discharge of her bankruptcy, Experian continues to allow BofA, Wells Fargo, Barclay's, LendingClub, TD, and TIC to report the account as past-due with an outstanding balance and with no bankruptcy notation.

93. Consequently, Defendant Experian is liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

94. In the alternative, Experian was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

95. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendant Experian)

**Experian – Failure to Reinvestigate Disputed Information.**

96. Plaintiff re-alleges and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

97. After Plaintiff disputed the accounts mentioned above, Experian was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 U.S.C. § 1681i-(a)1.
98. Experian failed to conduct a reasonable investigation and failed to correct the misleading and/or inaccurate statements on the account within the statutory time frame or at all.
99. Experian could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the BofA, Wells Fargo, Barclay's, LendingClub, TD, and TIC accounts should be reporting as included/discharged in bankruptcy rather than past-due with a balance owed.
100. Experian received two separate disputes from Plaintiff regarding the bankruptcy issues.
101. Plaintiffs allege that Experian has its own independent duty to conduct a reasonable investigation 15 U.S.C. § 1681i-(a)1.
102. Experian is not a passive entity bound to report whatever information a DF provides.
103. Given the aforementioned, Plaintiff alleges that Experian can and does suppress inaccurate information from being reported when DFs provide inaccurate information.
104. Experian can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.
105. Experian failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.
106. Experian intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian's general policy is to simply parrot whatever information a data furnisher sends.

107. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

## THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendant Experian)

**Experian – Failure to Review and Consider All Relevant Information.**

108. Plaintiff reallege and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.
109. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.
110. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.
111. The violations by Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.
112. In the alternative Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.
113. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendant Experian)

**Experian – Failure to Delete Disputed and Inaccurate Information.**

114. Plaintiff re-allege and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
115. Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.
116. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.
117. The violations by Experian were willful, rendering it individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.
118. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.
119. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
4. For determination by the Court that Defendants' policies and

practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

5. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

DATED:  April 17, 2024 **Gale, Angelo, & Johnson, P.C.**

By: _____*/s/ Joe Angelo*_____
Joe Angelo
Attorney for Plaintiff